IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-207-FL

DELAINA HARRELL,

Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

Defendant.

MEMORANDUM AND RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-13, -15]. Claimant Delaina Harrell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the decision of the Commissioner be reversed and the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 21, 2019, alleging disability beginning August 1, 2016. (R. 15, 92). The claim was denied initially and upon reconsideration. (R. 76–111). A hearing before an Administrative Law Judge ("ALJ") was held on August 12, 2020, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 35–75). On August 27, 2020, the ALJ issued a decision denying Claimant's request for benefits, (R. 12–34), and the Appeals Council denied Claimant's request for

review, (R. 1–6). Claimant then filed a complaint in this court seeking judicial review of the administrative decision, (R. 2407–08), and the case was remanded on the Commissioner's consent motion for further proceedings, (R. 2415–19). While the case was pending, Claimant also applied for SSI which was combined with her DIB claim on remand. (R. 2439, 2695–700). On April 30, 2022, the Appeals Council remanded the case to the ALJ resolve issues regarding Claimant's Residual Function Capacity ("RFC"). (R. 2436–40). Another hearing was held before the same ALJ on September 27, 2022, (R. 2298–339), and a decision denying Claimant's request for benefits was issued October 19, 2022, (R. 2465–503). Claimant again requested review by the Appeals Council, which vacated the decision and remanded the case to a new ALJ to resolve issues regarding Claimant's migraines and the RFC. (R. 2504–08). The ALJ held a hearing on December 15, 2023, (R. 2340–75), and Claimant's request for benefits was denied again on April 6, 2024, (R. 2262–97). The Appeals Council declined to assume jurisdiction on February 23, 2025, (R. 2255–61), and Claimant then filed her second complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large

or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c) and 416.920a(b)–(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date of August 1, 2016. (R. 2268). Next, the ALJ determined Claimant had the severe impairments of migraines; asthma; obesity; unspecified arthropathies; bipolar disorder; anxiety; depression; attention deficit hyperactivity disorder (ADHD); and post-traumatic stress disorder (PTSD). (R. 2268–69). The ALJ also found to be non-severe impairments Claimant's Skene's gland abscess; gastritis; peptic ulcer disease; bronchitis; GERD; laceration/cellulitis, left wrist; TMJ; foot contusion; hand contusion; toe fracture; cellulitis, left eye; benign ovarian cyst; dental carries; lumbar strain; cough, sore throat; allergic rhinitis; herpes zoster; sinusitis; right shoulder sprain; dizziness; septal deviation; URI; menorrhagia; COVID-19 infection; elevated LFTs; and lower respiratory infections, and found Claimant's rheumatoid arthritis and fibromyalgia were not medically-determinable impairments. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 2269–73). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate

limitations in interacting with others; in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 2272–73).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> [C]an lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours and stand and/or walk for six hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. The claimant can frequently handle, finger, and feel bilaterally. She can have occasional exposure to dust, odors, fumes and pulmonary irritants but have no exposure to unprotected heights. She can work in environments with moderate levels of noise. The claimant can have no exposure to bright lights defined as no brighter than typically found in a doctor's office. She can perform simple, routine, and repetitive tasks but not at a production rate pace, meaning no assembly line work. She can make simple work-related decisions and can have occasional interaction with coworkers, supervisors, and the public. The claimant would be absent one day a month due to headaches.

(R. 2273–85). In making this assessment, the ALJ found Claimant's statements about her limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 2275). At step four, the ALJ concluded Claimant is unable to perform her past relevant work as a receptionist. (R. 2285). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform. (R. 2286–87).

## V. DISCUSSION

Claimant asserts the ALJ erred by failing to account for the vocationally limiting effects of her migraine headaches in the RFC determination. Pl.'s Br. [DE-13] at 4–12. The Commissioner

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

contends that the ALJ properly evaluated the evidence and that substantial evidence supports the ALJ's RFC determination. Def.'s Br. [DE-15] at 4–8.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

The ALJ found Claimant's migraines to be a medically determinable severe impairment at

step two, (R. 2268), and accounted for Claimant's migraines in the final RFC determination, finding she would be absent one day a month due to headaches, (R. 2274). In the opinion the ALJ recounted Claimant's hearing testimony where Claimant stated she has had migraines her entire life, and currently they last a minimum of eight hours even with medication, and on average they last one day, but the week prior she had one that lasted four days. (R. 2274, 2350–52). Claimant testified she has three migraines a week and the prescription medication she takes for them makes her tired and dizzy, and she passes out. *Id.*

The ALJ then summarized the record evidence concerning Claimant's migraines, finding it failed to support Claimant's subjective reports concerning her migraine frequency and severity. (R. 2275–76). Although Claimant indicated at the hearing she suffered from migraines her entire life, the ALJ found "[t]here was no evidence showing any complaints or treatment around her alleged onset date, and she generally denied having any headaches during medical visits." *Id.* (citing R. 1521–1649). The ALJ concluded that the record supported a finding that Claimant first reported *migraines* in June 2019, although she had reported having *headaches* in September 2017 and early 2018.[2] (R. 2275).

The ALJ goes on to discuss the record evidence from when Claimant sought treatment at the Carolina Headache Institute ("CHI"), starting in April 2020. (R. 2275). At Claimant's initial CHI appointment, she reported headaches with sound, light, and smell sensitivity; nausea and vomiting; and occasional vertigo. (R. 2067–68, 2275). Claimant specifically denied medication

---

[2] Claimant asserts this finding is inconsistent with the record, which indicates Claimant reported "chronic headaches" as early as February 2016. Pl.'s Br. [DE-13] at 8 (citing R. 516). On February 7, 2016, Claimant was admitted to the WakeMed Emergency Department presenting with severe upper abdominal pain, nausea, and vomiting. (R. 516). Claimant reported to the treating physician she suffered from chronic headaches, which she treated with up to four packs of BC powder and 800 mg of Motrin (ibuprofen), *id.*, or three doses of 800 mg of ibuprofen, (R. 528), daily. She reported taking NSAIDs daily because she is "allergic to migraine medicines due to her throat clearing up." *Id.* Before discharging Claimant, the treating physician gave her strict instructions to avoid NSAIDs, and she voiced concern over leaving without having adequate pain control for her headaches. (R. 540).

side effects and had a Pain Catastrophizing Score of 41, which was above average. (R. 2067, 2275). Claimant's headaches improved after being prescribed medication; adjusting her caffeine intake; drinking more water; and having her IUD removed. (R. 2067–68, 2275–76). She later reported her headaches typically resolved in six hours; she was encouraged to increase physical activity; and thereafter her migraines were noticed to be controlled to the point where she felt well enough to obtain employment. (R. 2068, 2276, 3244). The ALJ asserts during subsequent visits Claimant reported fewer headache days and was reported to be doing very well on her medications. (R. 2276, 3243–45).

Lastly, the ALJ reasoned there was little to no support for Claimant's testimony that she stopped working because of her migraines and no support for Claimant's testimony that her medications make her dizzy and she passed out three times a week; the record does not indicate Claimant ever reported medication side effects or loss of consciousness to her medical providers; and there was no evidence of chronic pain or an inability to perform household tasks, and she was able to care for her husband as he recovered from a liver transplant. (R. 2281). Notwithstanding these findings, the ALJ still accounted for Claimant's migraines in the RFC determination, limiting Claimant to light work and finding she would be absent one day a month due to her migraines. *Id.*

**1. Carolina Headache Institute Records**

In the opinion, the ALJ explained that Claimant's providers noted her migraines were "controlled"; she was doing very well on her medication regimen; and "she reported fewer headache days each month." (R. 2276). Claimant asserts these statements are misleading. [DE-13] at 7. Although her headaches have improved, it is relative to her baseline of suffering from a headache nearly every day. (R. 2353). At CHI appointments Claimant was regularly asked to report the number of headache days she suffered over the prior 30 days, rating them as severe,

moderate, or mild. (R. 2358). Although the ALJ stated Claimant reported fewer headache days each month, citing to Claimants CHI records, the CHI records do not support this finding. (R. 2276). The CHI records show that Claimant reported the number and intensity of her monthly headaches as follows:

| Date Reported | Severe | Moderate | Mild | Cite |
|---|---|---|---|---|
| July 16, 2021 | 2 | 2 | 2 | R. 3515, 3602 |
| October 12, 2021 | 5 | 4 | 0 | R. 3514 |
| November 16, 2021 | 8 | 4 | 2 | R. 3513, 3593 |
| April 12, 2022 | 8 | 4 | 4 | R. 3512, 3593 |
| June 1, 2022 | 8 | 4 | 3 | R. 3509, 3574 |
| June 3, 2022 | 10 | 3 | 3 | R. 3507 |
| July 13, 2022 | 13 | 3–4 | 3–4 | R. 3567 |
| September 20, 2022 | 6 | 3 | 4 | R. 3506, 3557 |
| May 17, 2023 | 8 | 6 | 5 | R. 3458 |
| July 12, 2023 | 8 | 3 | 4 | R. 3539 |
| August 22, 2023 | 8 | 6 | 4 | R. 3529–30 |
| October 4, 2023 | 8 | 3 | 5 | R. 3519–20 |

Based on the record evidence, the ALJ's factual finding that Claimant reported fewer headache days each month is not supported by substantial evidence. Although the ALJ cites to Claimant's CHI records, which includes the headache logs, there is no explanation as to how the headache logs would indicate Claimant reported "fewer headache days each month" or whether the headache logs were given little or no weight because they are based upon Claimant's subjective reports. The headache logs are simply not discussed in the opinion.

Furthermore, while there are notes in the record that Claimant's migraines were

"controlled" at an August 23, 2021 visit to her primary care physician, (R. 2936), and that she was doing "very well on her current regimen" during CHI follow-ups on July 16, 2021, November 16, 2021, and April 12, 2022, (R. 3243–45); absent any discussion of the conflicting record evidence, those references appear to be improperly cherrypicked. The "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020) (finding the ALJ's conclusion erroneous where he misstated material facts and selectively cited from the record); *Garza v. Kijakazi*, No. 5:21-CV-268-FL, 2022 WL 4361923, at *5 (E.D.N.C. Aug. 24, 2022) (finding remand required where ALJ failed to build a logical bridge between evidence relating to plaintiff's migraines and conclusion that they did not impact the ability to work), *adopted*, 2022 WL 4358068 (E.D.N.C. Sept. 20, 2022); *Trimyer v. Bisignano*, No. 5:24-CV-720-RJ, 2026 WL 622688, at *6 (E.D.N.C. Mar. 5, 2026) (remanding where the ALJ failed to provide a narrative discussion of how the claimant's migraines impacted her ability to work). "When conflicting evidence is presented, it is the province of the ALJ, and not this court, to resolve those inconsistencies." *Brock v. Astrue*, No. 7:06-CV-62-D(2), 2007 WL 4287721, at *4 (E.D.N.C. Dec. 5, 2007).

This court cannot reweigh the evidence or speculate as to how the headache logs may have impacted the ALJ's RFC determination. "To enable meaningful judicial review, '[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023). Accordingly, the failure to address this record evidence frustrates meaningful review.

## 2. Intermittent Nature of Headaches

The ALJ discusses how Claimant was able to provide care for her husband during his recovery from a liver transplant and that the medical record evidence did not support Claimant's testimony that she needed help with household tasks and assistance with her personal care. (R. 2281). The ALJ does not discuss the intermittent nature of Claimant's headaches or how her ability to complete household tasks equates to being able to sustain substantial gainful employment. *See Patricia M. v. Bisignano*, No. 1:24CV691, 2025 WL 2697242, at *9 (M.D.N.C. Sept. 22, 2025) (holding the ALJ's reliance on the plaintiff's ability to complete daily activities was undermined by a failure "to acknowledge the possibility that [p]laintiff engaged in the activities . . . on days when [p]laintiff did not experience a severe migraine.") (collecting cases); *Trevin C. v. Bisignano*, No. 2:25CV298, 2026 WL 2035900, at *12 (E.D. Va. June 2, 2026), *adopted*, 2026 WL 2034467 (E.D. Va. July 14, 2026) ("Although the ALJ acknowledges that plaintiff could go to the YMCA, yoga, the library, and medical appointments, she failed to explain how these activities indicate plaintiff would not be absent from work due to intermittent migraines.").

At the hearing the VE testified that missing anything more than eight hours of work in a month would not be tolerated and eventually lead to termination. (R. 2374–75). The RFC determination is "the most a person can do in a work setting in light of [her] impairments, and any related symptoms, such as pain." *Dugger v. Colvin*, No. 5:15-CV-20-MOC, 2015 WL 6455390, at *3 (W.D.N.C. Oct. 26, 2015) (citing 20 C.F.R. § 404.1545). Although the ALJ found Claimant's headaches to be a severe impairment, there is no explanation as to why she would miss, at most, eight hours of work per month due to her headaches, when the headache logs in the record indicate she regularly has eight severe headaches a month. There is no evidence to indicate that Claimant's

severe headaches last, at most, a single hour. Accordingly, it is recommended that the decision of the Commissioner be reversed.

### 3. Reversal with an Award of Benefits

Claimant asks the court to reverse the ALJ's decision with an award of benefits. "The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that 'lies within the sound discretion of the district court.'" *Perry v. Colvin*, No. 5:13-CV-87-BO, 2014 WL 1056736, at *3 (E.D.N.C. Mar. 18, 2014) (quoting *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)). A remand for an award of benefits is appropriate "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974); *see also Lakeman v. Saul*, No. 7:18-CV-97-BO, 2019 WL 4385498, at *2 (E.D.N.C. Sept. 12, 2019) ("there is nothing to be gained from remanding this matter for further consideration and reversal for an award of benefits is appropriate"); *McKinney v. Colvin*, 111 F. Supp. 3d 663, 667 (E.D.N.C. 2015) (remanding for benefits because another hearing "would serve no purpose"). However, "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Hall v. Berryhill*, No. 7:16-CV-347-FL, 2018 WL 824488, at *3 (E.D.N.C. Feb. 12, 2018) (remanding for further proceedings "where further explanation by the ALJ may reveal that the decision is supported by substantial evidence"). The longevity of a case may be an important factor in determining whether an award of benefits or a new hearing is merited. *See, e.g.*, *Hunter v. Colvin*, No. 4:13-CV-235-BO, 2014 WL 6884054, at *2 (E.D.N.C. Dec. 3,

2014) (holding that "[r]eversal for an award of benefits is proper where, as here, the case has already been heard by the district court once before and the agency continues to make mistakes on remand," and noting that the case had been pending for nine years); *see Harshman v. Berryhill*, No. 5:16-CV-261-FL, 2017 WL 3669621 (E.D.N.C. Aug. 8, 2017), *adopted*, 2017 WL 3669516 (E.D.N.C. Aug. 24, 2017).

At the hearing Claimant testified the reason she had stopped working was due to her migraines and fibromyalgia getting incredibly bad.[3] (R. 2350). The ALJ noted there was little to no support for this testimony and at the time she stopped working she reported to her medical provider she lost her job secondary to severe vaginal pain. (R. 733, 2281). Furthermore, although Claimant testified she suffered from migraines her entire life, the ALJ found "[t]here was no evidence showing any complaints or treatment around her alleged onset date, and she generally denied having any headaches during medical visits." (R. 2275) (citing R. 1521–1649). The ALJ concluded that the record supported a finding that Claimant first reported *migraines* in June 2019, although she had reported having *headaches* in September 2017 and early 2018. (R. 2275). Although Claimant did not seek treatment from a headache specialist until April 2020, (R. 2067–68), the record evidence indicates she reported suffering chronic headaches as early as February 2016, (R. 540). In addition to considering conflicting evidence, the ALJ had an "obligation to consider whether [Claimant] became disabled at any point between the alleged onset date and the date of the ALJ's decision." *Childers v. O'Malley*, No. 3:24-CV-110-MOC, 2024 WL 3833275, at *4 (W.D.N.C. Aug. 15, 2024) (citing *Sykes v. Comm. of Soc. Sec.*, No. ELH-16-898, 2017 WL 35436, at *2 (D. Md. Jan. 4, 2017); *Shiplett v. Colvin*, No. 5:15-cv-55, 2016 WL 6783270, at *13

---

[3] At step two, the ALJ determined Claimants migraines were a medically determinable severe condition but concluded the medical evidence indicated that fibromyalgia was only suspected, and no specific medical testing was ever done, therefore it was not a medically determinable impairment. (R. 2268–69). Claimant does not challenge this finding.

(W.D. Va. Nov. 16, 2016)). Despite concluding Claimant's migraines became a severe impairment at some point in time, that would cause her to be absent from work at most one day a month, the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford*, 227 F.3d at 872). Despite finding Claimant's migraines would cause absenteeism, the ALJ failed to discuss how she concluded that Claimant would miss, at most, one day of work a month. The ALJ's failure to meaningfully consider conflicting evidence, the entirety of Claimant's record, and when Claimant's headaches could have been considered disabling frustrates meaningful review. Accordingly, it is recommended that the case be remanded to the Commissioner for further proceedings.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the final decision of the Commissioner be reversed and remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 20, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within 14 days of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation**

**by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 6th day of August, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge